Robert B. Salgado (SBN 297391)
DAVIS & NORRIS, LLP
5755 Oberlin Drive, Suite 301
San Diego, CA 92121
Phone Number 858-333-4103
Fax Number: 205-930-9989
Email: rsalgado@davisnorris.com

Dargan Ware (SBN 329215)
John E. Norris (pro hac vice anticipated)
Andrew Wheeler-Berliner (SBN 290495)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone; 205.930.9900
dware@davisnorris.com
jnorris@davisnorris.com
andrew@davisnorris,com

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN D. RANDALL, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHANGE.ORG, PBC, <br><br> Defendant(s). | Case No.: 3:20-CV-03863-EMC <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Hon. Edward M. Chen <br> Originally Filed June 11, 2020 |

## CLASS ACTION COMPLAINT

### INTRODUCTION

1. The death of George Floyd on May 28, 2020, at the hands of Minneapolis policeman Derek Chauvin, who pressed his knee into Mr. Floyd's neck for nearly nine minutes, has shocked and horrified the nation and the world. Millions of people have decided to speak up, to protest in the streets, and to engage in various forms of activism online.

2. Defendant Change.org, PBC. presents itself as a tool for this activism. It hosted a petition calling for justice for Mr. Floyd that has been signed by nearly 20 million people. In addition, individuals that signed the petition donated more than 7.7 million dollars. Another petition, in memory of Breonna Taylor, another African American murdered by the police, raised more than two million additional dollars.

3. The Defendant solicited these donations and promised to use them for three specific purposes: putting the petition on billboards across the country, blanketing social media with calls to join, and emailing the petition to millions of people. As its Chief Operating Officer, Benjamin Joffe, freely admits in a declaration filed with this court, Defendant did not use the donated money for these purposes. (See Doc. 15-1)

### PARTIES JURISDICTION AND VENUE

4. Plaintiff Sean Randall is an adult resident citizen of Los Angeles County, California.

5. Defendant Change.Org, PBC. is a public benefit corporation and certified B corporation organized under the laws of Delaware with its principal place of business in San Francisco, California.

6. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the claims in this case form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.00 and the members of the nationwide class include citizens of different states than the defendant.

7. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because the Defendant resides in this district, having its principal place of business in San Francisco.

### FACTS

8. According to Change.org's filings with this Court, nearly twenty million people have signed a petition begun by a user named Kellen S., seeking justice for George Floyd. Plaintiff Sean Randall

1  is one of those people.

2  9.  When Mr. Randall signed the petition, the next screen he saw on Change.Org asked him "Can you chip in $3 or more to keep this petition on the agenda?" The screen also prompted Mr. Randall to "be a hero" and join millions of other Change.Org users who had already donated to this petition. Mr. Randall decided to donate $3.00.



10. The donation screen told Mr. Randall exactly what Change.Org would do with the money donated. According to the screen users see after signing the petition, "[c[hipping in allows Change.org to put the petitions on billboards across country [sic], blanket social media with calls to join, and email the petition to millions of people."

11. Change.org collected 9.9 million dollars from users who signed petitions related to the deaths of George Floyd and Breonna Taylor. See "Change.org and Racial Justice" available at https://www.change.org/l/us/change-org-and-racial-justice. (last accessed Sept. 9, 2020) (See also Doc. 15-1). Defendant explicitly promised those donors that it would use the money to purchase billboards, promote the petition, and send emails.

12. In his declaration, Defendant's Chief Operating Officer, Benjamin Joffe-Walt, admits that Change.org does not normally actually use the money for "offsite advertising," but instead simply pays itself to advertise on Change.org's own website:

> Because of the immense popularity of the Floyd Petition, Change.org decided to supplement its ordinary method of promoting petitions—displaying advertisements to users on the Change.org website and over email—with several forms of "offsite" advertising.

(Doc. 15-1 at ¶ 18.)

13. Defendant further admits that, of the approximately 9.9 million dollars collected from users in relation to the Floyd and Taylor petitions, it spent just over half a million on the billboards and social media advertising that it promised users it would use the money for:

> Accordingly, starting on June 1, 2020, Change.org spent $102,000 advertising the Floyd Petition on 118 digital billboards at locations across the United States, and another $415,000 promoting the Petition to millions of viewers on the social-media platforms Facebook and Instagram.

(Id. at ¶ 19). That means Change.org spent approximately $517,000 or about 5.2 percent of the 9.9 million it collected on the purposes it promised to fund with the money.

14. What did it do with the rest? Mr. Joffe-Walt's declaration answers that question as well. He states that the remaining money will be spent in three ways. First, $1.5 million will be spent to "create a new internal team dedicated to racial justice advocacy." Next, $6 million will go "into a fund dedicated to fighting for and supporting racial justice efforts." Finally, the final $2.5 million will be used for what Change.org actually promised to use all the money for, promoting the petitions that garnered the donations in the first place.

15. What did it do with the rest? Mr. Joffe-Walt's declaration answers that question as well. He states that the remaining money will be spent in three ways. First, $1.5 million will be spent to "create

1  a new internal team dedicated to racial justice advocacy." Next, $6 million will go "into a fund
2  dedicated to fighting for and supporting racial justice efforts." Finally, the final $2.5 million will be
3  used for what Change.org actually promised to use all the money for, promoting the petitions that
4  garnered the donations in the first place.

5      16. Mr. Joffe-Walt's declaration also betrays that Change.org believes that, despite promising on
6  the donation page to spend the donated money on specific purposes, it had an obligation only to
7  provide a certain number of "impressions." However, the screen that told Mr. Randall how many
8  "impressions" his donation purchased did not appear until after he had made the donation.

**change.org**

**Thank you for promoting this petition**

Thank you for spreading awareness of this petition. You chipped in $3.00 to promote **Kellen S's** petition. Your contribution goes towards featuring this petition 38 more times on Change.org to potential supporters.

14      17. This is a very simple breach of contract case. The Defendant promised to use the money
15  donated by Plaintiff and the class for specific purposes. It then decided to use the money for other
16  things. It matters not what those other things may be, because Plaintiff and the class did not give
17  Change.org the money to do with as it pleased, or even to use in its best judgment to further laudable
18  causes.

### CLASS ALLEGATIONS

20      18. This nationwide class action is maintainable against the defendants pursuant to Rule 23 of the
21  Federal Rules of Civil Procedure. Plaintiff seeks to represent the following class against defendant:

> All individuals in the United States who donated to any petition seeking justice for George Floyd and Breonna Taylor, including, but not limited to, the petition entitled "Justice for George Floyd" and available at the following url: https://www.change.org/p/mayor-jacob-frey-justice-for-george-floyd?source_location=discover_feed. All employees of the Court and plaintiffs' counsel are excluded.

26      19. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is
27  impracticable. Defendant's website states that seventeen million people have signed the petition, and
28  a screen shot taken on June 4th (attached as Exhibit A), shows that more than 8.9 million people had

either donated or shared the petition. A running scroll beside the donation button also showed numerous donors with many more continuously added. Thus, the number of people who donated to this petition is far too large for practicable joinder in a single suit.

20. Pursuant to Rule 23(a)(2), this case is predominated by questions of law and fact common to all class members, including whether the defendant used the money as it promised to.

21. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class. Every member of the class donated to the "Justice for George Floyd" petition.

22. Pursuant to Rule 23(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interest adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

23. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiff, like those of all class members, arise out of conduct by the defendant to solicit donations, to promise to use those donations in specific ways, and to use those donations in entirely different ways, affecting all class members in the same fashion. For these reasons, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

### CLAIM FOR RELIEF – BREACH OF CONTRACT

24. Plaintiff incorporates by reference the factual allegations of Paragraphs 10-18.

25. Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011).

26. Plaintiff Sean Randall created a valid contract with Defendant Change.Org when he donated money to the "Justice for George Floyd" petition.

27. Plaintiff performed under that contract by completing the donation to the petition.

28. Defendant breached the contract by failing to use the money as it promised to do. Whereas Defendant promised to spend the donated money on billboards, circulation of the petition, and emails, the money donated to the petition has been used for other purposes, including upgrading Defendant's website, hiring a new racial justice team, and donating to third parties.

**PRAYER FOR RELIEF**

Plaintiff respectfully prays for the following relief,

(A) An order certifying the above-described class pursuant to Federal Rule of Civil Procedure 23, with appropriate notice to absent class members;

(B) An order appointing plaintiffs' counsel as class counsel for the nationwide class;

(C) A declaratory ruling that the defendants have engaged in the practices alleged herein in violation of law;

(D) An order for an accounting of how Change.org utilizes its donations and an injunction requiring that Change.org be transparent about its use of donations in the future;

(E) After a jury trial, an award of money damages to Plaintiff and the class;

(F) Any further or different relief the Court may find appropriate.

DATED: September 22, 2020

Robert Salgado